IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **DANIEL FRY, et al.**, | Case No.3:11 CV 281 |
| Plaintiff, | Judge Jack Zouhary |
| v. | REPORT AND RECOMMENDATION |
| **BERKS CREDIT & COLLECTIONS, INC.**, | |
| Defendants. | Magistrate Judge James R. Knepp, II |

## Introduction

Plaintiffs Daniel and Jennifer Fry bring this action against Defendant Berks Credit & Collections, Inc. under the Fair Debt Collections Practices Act (FDCPA). The case was referred to the undersigned for pretrial supervision and the filing of a Report and Recommendation. (Doc. 7). The District Court has jurisdiction over this case under 28 U.S.C. § 1331.

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 11). Plaintiffs filed a Response (Doc. 14), to which Defendant filed a Reply (Doc. 15). For the reasons given below, the Court recommends Defendant's Motion be granted.

## Background

This lawsuit stems from the attempts to collect a debt owed by Plaintiff Jennifer Fry to the Findlay Surgical Center. (Doc. 14-1, at 1; Doc. 11-1, at 6). Defendant placed a series of telephone calls in an attempt to contact Jennifer about the debt. (Doc. 11-1, at 4). The undisputed records show that 69 phone calls were made to Plaintiffs' home between November 17, 2010 and January 10, 2011. (Ex. A, Doc. 11-1, at 14–19; Doc. 14, at 6–7). There were nineteen days during which Defendant placed three calls to Plaintiffs and five other days during which Defendant placed two

calls. (Ex. A, Doc. 11-1, at 14–19). There were five days during which only one call was made and 24 days during which no calls were made. (Ex. A, Doc. 11-1, at 14–19). The earliest call was at 8:44 AM and the latest call was at 7:43 PM. (Ex. A, Doc. 11-1, at 14, 17). However, according to Plaintiffs, because they both worked graveyard shifts, these calls were usually made while they were sleeping. (Doc. 14-1, at 3).

For all but one of the phone calls in question, Plaintiffs did not answer the phone and the call went to their answering machine, without Defendant ever leaving a message. (Doc. 14-1, at 2). However, one call was allegedly different. On November 18, 2010, Defendant called Plaintiffs at 9:10 AM and Plaintiff Daniel Fry answered. (Doc. 14-1, at 2). Plaintiff heard an automated voice on the other end state the call was for his wife. Plaintiff then waited for the call to be connected to a live person, at which point Plaintiff alleges he heard nothing but a "heinous laugh". (Doc. 14-1, at 2). When Plaintiff said "hello", he heard a clicking noise and the call ended. (Doc. 14-1, at 2). Defendant disputes this incident; in its Motion for Summary Judgment, it asserts Defendant "did not have any contact with Plaintiffs." (Doc. 11, at 2). Also, in Defendant's responses to Plaintiff's requests for admissions, it denies having communicated with Plaintiffs. (Ex. A, Doc. 11-1, at 10). However, for purposes of this Motion, the Court assumes Plaintiffs' version to be correct.

Plaintiffs brought this action alleging violations of multiple sections of the FDCPA. (Doc. 1, at 3). Plaintiffs seek statutory damages and attorney's fees. (Doc. 1, at 4).

**Standard of Review**

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences

2

from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). This burden "may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**Analysis**

Congress enacted the FDCPA to protect consumers by eliminating abusive, deceptive, and unfair debt collection practices. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332–333 (6th Cir. 2008). The statute is "'extraordinarily broad', crafted in response to what Congress perceived to be a widespread problem." *Id.* at 333 (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). But Congress also recognized the legitimacy of debt collection and intended to preserve "[m]eans other than misrepresentation or other abusive debt collection practices" for the effective collection of debts, ensuring that collectors who use such legitimate collection means are not competitively disadvantaged. 15 U.S.C. §§ 1692(c), (e).

When determining whether a debt collector's practices violate the FDCPA, courts look to the language of the statute first and then use an objective test based on the understanding of the "least sophisticated consumer." *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999); *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 400 (6th Cir. 1998) (quoting *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir.1993)). This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer*

*Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999).

Plaintiffs' § 1692e Claims

Plaintiffs allege violations of § 1692e and § 1692e(10). (Doc. 1, at 3). These sections of the FDCPA prohibit using "false, deceptive, or misleading representation or means in connection with the collection of any debt", which specifically includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e, 1692e(10). Plaintiffs allege Defendant used deceptive means to attempt to collect a debt by (1) calling and hanging up without leaving voicemail messages, and (2) calling from seven different phone numbers. (Doc. 1, at 3).

In Defendant's Motion for Summary Judgment, it argued there is no authority to support § 1692e claims based on calling from different phone numbers and failing to leave voicemail messages. Defendant cited to multiple cases finding no requirement under the FDCPA for a debt collector to leave voicemail messages. *See, e.g.*, *Druschel v. CCB Credit Services, Inc.*, 2011 WL 2681637, at *6–7 (M.D. Fla.); *Carman v. CBE Group, Inc.*, 2011 WL 1102842, at *8 ("there is no legal basis for plaintiff's claim that failure to leave a message is deceptive"). Defendants further argue that calling from seven different numbers does not amount to being false, misleading, or deceptive. *See Glover v. Client Services, Inc.*, 2007 WL 2902209, at *6 (W.D. Mich. 2007) (finding no authority to require debt collectors to disclose their identity via caller ID before contact with the debtor or the debtor's recording device is achieved).

In Plaintiffs' Response, Plaintiffs did not assert a genuine issue of material fact regarding these claims and did not contradict the authority cited by Defendant. In fact, Plaintiffs voluntarily withdrew their allegations of § 1692e and § 1692e(10) violations. (Doc. 14, at 8 n.1). As such,

4

Plaintiffs' § 1692e and § 1692e(10) claims should be dismissed.

Plaintiffs' § 1692d Claims

Plaintiffs allege violations of § 1692d, § 1692d(5), and § 1692d(6). This part of the FDCPA reads as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.

When viewing the facts in a light most favorable to Plaintiff, the Court believes that no reasonable juror could find this fact pattern to be harassment, oppression, or abuse. Therefore, Defendant is entitled to summary judgment on the § 1692d claims.

Specifically, with regard to Plaintiff's § 1692d(5) claim, "the nature of the telephone calls, including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass". *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010); *Pugliese v. Prof'l Recovery Serv., Inc.*, 2010 WL 2632562, at *9 (E.D. Mich. 2010) ("To determine whether Defendant['s] calls amount to harassment, annoyance, or abuse, the volume of the calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct."). But "[t]here is no bright line rule regarding the number of calls which creates the inference of intent." *Hicks v. America's Recovery Solutions, LLC*, 2011 WL 4540755, at *6 (N.D. Ohio 2011).

The precedent from other jurisdictions on this issue is somewhat inconsistent. Courts have found intent to be a jury question when the defendant placed as few as 26–28 calls over a two-month period, and conversely, courts have granted defendants summary judgment after making 57 total calls, including seven in one day. *Id.* at *6 (citing *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004); *Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010)). In addition to the number of calls, some courts have looked to the percentage of calls which resulted in actual communication with the debtor. For example, in *Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 (E.D. Mich. 2009), the court found no § 1692d violation after a large percentage of the calls made were unsuccessful in reaching the debtor. *Id.* at *7. The court reasoned this low ratio of successful calls to unsuccessful calls suggested "a difficulty of reaching Plaintiff, rather than an intent to harass." *Id.* (citing *Millsap v. CCB Credit Services, Inc.*, 2008 WL 8511691, at *17 (E.D. Mich. 2008)). Recently, this court cited the *Saltzman* ratio logic. *Hicks*, 2011 WL 4540755, at * 6 ("[A] significant disparity between the number of telephone calls placed by the defendant and answered by the plaintiff may suggest difficulty in reaching the plaintiff rather than intent.").

After consideration of the record and precedent, the undersigned believes no reasonable juror could decide that making 69 calls over a two month period, when (1) the calls were never made more than three times per day; (2) the calls were never immediately following one another; (3) the debtor never communicated anything to the collector let alone ever told them to stop calling; (4) there were 24 days in the two-month period when no calls were made; and (5) at most only one call was ever answered, shows an intent to annoy, abuse, or harass. This determination is especially bolstered by the fact that Defendants made no more than one successful contact with the debtor's

6

spouse, and no successful contacts with the debtor, after at least 68 unsuccessful attempts. Following *Saltzman*, *Hicks*, and *Millsap*, this ratio of unsuccessful to successful calls suggests a difficulty in reaching Mrs. Fry, not an intent to abuse, harass, or annoy any person at the called number. Therefore, Defendant is entitled to judgment as a matter of law on this issue.

Plaintiffs' remaining § 1692d claim is an allegation Defendant violated § 1692d(6) by failing to provide meaningful disclosure of its identity. (Doc. 1, at 3). Though "[t]he statute itself recognizes that answering the phone is not necessary for there to be harassment", *Meadows v. Franklin Collection Service*, 2011 WL 479997, at *3 (11th Cir. 2011), this Court recently held the failure of a debt collector to leave voicemail messages does not make phone calls harassing under § 1692d(6). *Hicks*, 2011 WL 4540755, at *6. In *Hicks*, the court wrote, "Requiring debt collectors to leave a message each time they called would create inconsistency within the FDCPA. Such a practice would be more harassing . . . since consumers would still get the calls, but would now have to listen to a slew of voicemails as well." *Id.* at *7.

It follows that Defendant's failure to leave voicemails, as a matter of law, does not violate § 1692d(6). If Defendant had left voicemails while still not disclosing its identity, the result could be different. But Plaintiffs do not allege Defendant ever left Plaintiffs a single voicemail, and Defendant denies ever "communicating"[1] with Plaintiffs. (Doc. 11-1, at 10). Following *Hicks*, Defendant was under no legal obligation to leave Plaintiffs a voicemail.

Plaintiff further argues Defendant violated § 1692d(6) through the alleged "heinous laugh" incident. Defendant denies ever having communicated with Plaintiffs (Ex. A, Doc. 11-1, at 10.) and

---

1. The FDCPA's definition of "communication" is "the conveying of information . . . to any person *through any medium*." 15 U.S.C. § 1692a(2) (emphasis added). This statutory definition clearly includes leaving a voicemail.

says the "heinous laugh" call was dropped upon being transferred to a live person (Doc. 15, at 5). However, this dispute of fact is immaterial. As Defendant correctly argues, this incident would not support a claim under § 1692d(6) even if true as alleged.

The language in § 1692d(6) has been interpreted to mean debt collectors are required to meaningfully disclose their identity once contact is achieved with the debtor or the debtor's recording device. *Glover v. Client Services, Inc.*, 2007 WL 2902209, at *6 (W.D. Mich. 2007). Though § 1692c(d) defines "consumer" to include the consumer's spouse, this definition is "for the purpose of this section" – dealing with calls at unusual times, to a debtor's employer, or to debtors with lawyers, and communications with third parties – and therefore does not apply to § 1692d. Following the *Glover* interpretation here and assuming this incident to be true, no contact was achieved with the debtor – Mrs. Fry – because Mr. Fry was the person allegedly contacted. Also, no contact was achieved with the debtor's recording device. Thus there was no communication. Therefore, no violation of § 1692d(6) could have occurred. As such, Defendants are entitled to judgment as a matter of law.

**Conclusion and Recommendation**

Defendant is entitled to judgment as a matter of law on all of Plaintiffs' claims. Therefore, the undersigned recommends the Defendant's Motion for Summary Judgment be granted and the case dismissed.

s/James R. Knepp, II<br>
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice. Failure to file objections within the specified time WAIVES

the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).